IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DR. JACQUELINE M. JUNKINS-HOPKINS<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>THE JOHNS HOPKINS HOSPITAL, *et al.*<br><br>　　　　　Defendants | CIVIL ACTION<br>NO. 14-07080 |

PAPPERT, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　MAY 26, 2015

## MEMORANDUM

This dispute arises out of the employment of Plaintiff Dr. Jacqueline M. Junkins-Hopkins ("Junkins-Hopkins") by Defendants Johns Hopkins Hospital, Johns Hopkins School of Medicine, and Johns Hopkins University (collectively "JHH"). Junkins-Hopkins alleges that she was subjected to a hostile work environment and constructively discharged because of her race. She also alleges that JHH breached its employment contract with her. Before the Court are JHH's motion to dismiss the complaint as well as Junkins-Hopkins' motion for leave to file an amended complaint. Both motions are granted in part and denied in part.

**Background**

Junkins-Hopkins is an African-American woman. (Compl. ¶ 2.) According to her initial complaint, she contracted in October 2007 to serve as both an Associate Professor in the Dermatology Department at Johns Hopkins University School of Medicine and the Director of Dermapathology at Johns Hopkins Hospital. (*Id*. ¶ 11.) In the employment contract, JHH represented that Junkins-Hopkins would have the authority and autonomy to "build your division with faculty and staff members to support the operational and financial growth of the division."

(*Id.* ¶ 19.) It also promised to "support activities necessary to grow or regain the dermapathology business . . . ." (*Id.* ¶ 19.)

From the start of her employment with JHH, however, and continuing throughout her tenure there, Junkins-Hopkins "was subjected to overt and covert forms of hostility . . . ." (*Id.* ¶ 20.) She was not provided the support she was promised in her employment contract and was "denied the authority set forth therein . . . ." During her employment, Junkins-Hopkins was "aware of the hostile work environment . . . and to the absence of support, autonomy and authority she was promised." (*Id.* ¶ 22.) Yet she was not able to ascertain the underlying reason for this hostility and lack of support. (*Id.* ¶ 23.)

In December 2010, JHH advised Junkins-Hopkins that the terms of her employment "were to be altered in a negative fashion that would cause harm to her professional standing, reputation, earnings, etc." (*Id.* ¶ 25.) Junkins-Hopkins resigned her position upon hearing this news. (*Id.* ¶ 27.) Junkins-Hopkins believes that "[t]his was exactly the outcome JHH had hoped for, and it made no legitimate effort to convince [her] to continue on as its employee." (*Id.* ¶ 28.) She alleges that JHH negatively altered her terms of employment "without legitimate reason" in hopes that she would resign. (*Id.* ¶ 26.)

After her resignation, Junkins-Hopkins became aware of a number of facts of which she was unaware during her employment. (*Id.* ¶ 29.) For example, during a staff meeting held while Junkins-Hopkins was still negotiating her original contract, Dr. Charles Cummings ("Cummings"), the Medical Director for Johns Hopkins International stated that Junkins-Hopkins was "playing games with her contract," upon which Dr. Manish Patel called Junkins-Hopkins a "bitch." (*Id.* ¶ 30.)[1] In another meeting, Cummings openly referred to Junkins-

---

[1] A number of the facts Junkins-Hopkins learned after her resignation are included in a complaint filed in the United States District Court for the District of Maryland by Dr. Nanette Liégeois, who was part of the search

2

Hopkins as "that black fucking bitch." (*Id.*) This comment caused other JHH employees to begin referring to Junkins-Hopkins by the same phrase. For example, one of Junkins-Hopkins' colleagues overheard one doctor tell another, "Did you hear the Department of Dermatology finally hired someone. It's supposed to be some black fucking bitch. Wait till you see what we do to her." (*Id.*)

Furthermore, Junkins-Hopkins learned that Cummings had initially tried to block her from being hired. (*Id.*) After his efforts failed, he told another doctor that Junkins-Hopkins only got the job because she was a black woman. (*Id.*) He encouraged other employees to protest Junkins-Hopkins' hiring. (*Id.*) As a result, JHH employees began to gossip that Junkins-Hopkins was only hired because of her race. (*Id.*) One month after JHH hired Junkins-Hopkins, Cummings was appointed Interim Chair of the Department of Dermatology. (*Id.*)

Based on these facts, Junkins-Hopkins asserted claims for race discrimination pursuant to 42 U.S.C. § 1981[2] and breach of contract. Her § 1981 claim was premised both on a hostile work environment and a constructive discharge. JHH moved to dismiss both counts in the complaint for failure to state a claim upon which relief can be granted. JHH argued that Junkins-Hopkins could not maintain a hostile work environment claim because she "did not perceive any racial hostility while working at [JHH]." (Mem. in Supp. of Mot. to Dismiss at 6, Doc. No. 8-2.) It further argued that because Junkins-Hopkins' hostile work environment claim failed, "she cannot prevail, as a matter of law, on her constructive discharge claim" based on a hostile work

---

committee that selected Junkins-Hopkins for the position of Director of Dermapathology. Junkins-Hopkins attaches a copy of the Liégeois complaint to her own and incorporates by reference the relevant facts therein. (*See* Compl. ¶ 30; Am. Compl. ¶ 55.)

[2]     42 U.S.C. § 1981 prohibits racial discrimination in the formation, performance, modification, and termination of contracts, including employment contracts. *See Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 302 (1994); *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987).

environment. (*Id.* at 9.) Finally, it asserted that Maryland's three-year statute of limitations barred the breach of contract claim.

In response to the motion to dismiss, Junkins-Hopkins filed a motion for leave to file an amended complaint. The proposed amended complaint includes additional factual allegations regarding the hostility of Junkins-Hopkins' work environment. For example, Junkins-Hopkins describes several occasions on which JHH overrode, rejected, or ignored Junkins-Hopkins' decisions for hiring personnel to work in her department despite the employment contract provision giving her autonomy to build the department. (Am. Compl. ¶¶ 28-31.)[3] She alleges that she was excluded from meetings that a Director of Dermapathology would normally attend and was shut out of decision-making processes in which a Director of Dermapathology would normally participate. (*Id.* ¶¶ 32, 35.) She alleges that JHH denied her access to recruit young pathologists and severed certain relationships on which Junkins-Hopkins depended. (*Id.* ¶¶ 33-34.) She alleges that on numerous occasions she was denied "ordinary benefits such as sick/personal leave time . . . ." (*Id.* ¶ 35.) Rather than fix these problems, JHH allegedly "responded by repeatedly undermining [Junkins-Hopkins]." (*Id.* ¶ 40.) The net effect of all of this was to make Junkins-Hopkins "feel isolated, insignificant, not worthy of respect, sad, depressed, angry, alone and otherwise 'unwanted.'" (*Id.* ¶ 36.) Junkins-Hopkins "often felt what she believed to be attitudes of disdain and/or condescension emanating from certain of her superiors and/or contemporaries." (*Id.* ¶ 37).

The proposed amended complaint also contains a number of additional allegations regarding the negotiation and performance of the employment contract. Junkins-Hopkins now alleges that she was in Pennsylvania when she received, negotiated, and accepted the

---

[3] Junkins-Hopkins attaches a copy of the proposed amended complaint as Exhibit A to her motion for leave to file an amended complaint. For ease of reference, the Court cites the exhibit as the Amended Complaint.

employment offer. (*Id*. ¶ 17.) She alleges that she resided in Pennsylvania during her employment with JHH and the employment contract included a provision to reimburse her for "daily travel from Philadelphia to Baltimore." (*Id*. ¶ 26.) Finally, she alleges that during the term of her employment she "performed approximately 25% of her duties from her home in Pennsylvania . . . ." (*Id*. ¶ 47.)

JHH opposes Junkins-Hopkins' motion for leave to file an amended complaint. They believe that the additional allegations do not cure the defects in the original complaint and amendment is therefore futile.

**Legal Standard**

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When making this determination, the court can consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

When faced with a motion for leave to amend a complaint, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Yet a court need not grant leave to

5

amend where amendment would be futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile."). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) ("The standard for assessing futility is the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).") (quotation omitted). When assessing whether amendment would be futile, the court must "tak[e] all pleaded allegations as true and view[] them in a light most favorable to the plaintiff." *Winer Family Trust v. Queen*, 503 F.3d 319, 330–31 (3d Cir.2007). Because the legal standard for reviewing a complaint under a Rule 12(b)(6) motion and evaluating a proposed amended complaint for futility are identical, the Court addresses JHH's motion to dismiss and Junkins-Hopkins' motion for leave to amend concurrently.

**Discussion**

Both the complaint and proposed amended complaint allege that Junkins-Hopkins was subjected to a hostile work environment because of the color of her skin in violation of 42 U.S.C. § 1981 (Count I). JHH moves to dismiss this count, arguing that the factual allegations in the complaint fail to state a claim upon which relief can be granted. JHH contends that the proposed amendment is futile because it fails cure the deficiencies of the § 1981 claim. JHH finds dispositive a single fact that appears in both the complaint and the proposed amended complaint: that Junkins-Hopkins "was wholly unaware of any alleged racially hostile comments made to her or about her while employed at [JHH]." (Defs.' Opp'n to Mot. for Leave to Amend at 8, Doc. No. 15). JHH contends that Junkins-Hopkins cannot maintain a hostile work environment claim

6

where she was not contemporaneously aware that "the working environment at [JHH] was *racially* abusive or hostile." (Mem. in Supp. of Defs.' Mot. to Dismiss at 13 (emphasis added).)

The cases JHH cites in support of this proposition do not go so far. Rather, these cases stand only for the proposition that a plaintiff must be contemporaneously aware that their work environment is hostile or abusive. *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21-22 (1993) ("[I]f the victim does not subjectively perceive the environment to be *abusive*, the conduct has not actually altered the conditions of the victim's employment . . . .") (emphasis added); *Spain v. Gallegos*, 26 F.3d 439, 450 (3d Cir. 1994) ("Spain has contended that she perceived herself to be subject to an *abusive* environment as manifested through her co-workers' and supervisors' interaction with her.") (emphasis added). This does not mean that the plaintiff must be contemporaneously aware that this hostility and abusiveness is racially motivated.[4] *See e.g.*, *Howard v. Blalock Elec. Serv., Inc.*, 742 F. Supp. 2d 681, 694 (W.D. Pa. 2010) ("The Court acknowledges that an employee who is *totally unaware* of harassing behavior cannot subjectively *perceive* such conduct to be hostile or abusive. However, in the instant case, Howard *was* aware of the conduct itself. Instead, he merely had no reason to believe that it had been racially motivated until later, when he heard Bishop refer to him in a racially-disparaging manner.").

JHH also gives an overly narrow reading of the case law when arguing that Junkins-Hopkins cannot base her hostile work environment claim on comments of which she was unaware at the time. The cases JHH cites make clear that a plaintiff cannot base a claim *solely* on unheard comments. *See, e.g., Hightower v. Easton Area Sch. Dist.*, 818 F. Supp. 2d 860, 878

---

[4] The Court notes that the opinions that JHH cites on this point all deal with summary judgment motions. *See, e.g., Toth v. Cal. Univ. of Pa.*, 844 F. Supp. 2d 611, 654 (W.D. Pa. 2012) (granting defendants' motion for summary judgment on hostile work environment claim); *Hightower v. Easton Area Sch. Dist.*, 818 F. Supp. 2d 860, 879 (E.D. Pa. 2011) (same). At the motion to dismiss stage, however, Junkins-Hopkins needs only to allege facts sufficient to establish a plausible basis for relief. *See Fowler*, 578 F.3d at 211.

(E.D. Pa. 2011). Yet racist comments directed to others "may be considered in determining whether facially neutral conduct on the part of a defendant was actually based on a plaintiff's race." *Id.* (citing *Caver v. City of Trenton*, 420 F.3d 243, 264 (3d Cir. 2005) (quotation omitted)).

Here, Junkins-Hopkins alleges facts to show that she was subjectively aware that she was treated differently from her colleagues. She presents the racial comments of her supervisors and coworkers only to show a causal connection between this disparate treatment and her race. Junkins-Hopkins is not precluded from maintaining her hostile work environment claim simply because her supervisors and co-workers were adept at hiding their alleged racial animosity from her. *See Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1082 (3d Cir. 1996) ("It has become easier to coat various forms of discrimination with the appearance of propriety, or to ascribe some other less odious intention to what is in reality discriminatory behavior. In other words, while discriminatory conduct persists, violators have learned not to leave the proverbial 'smoking gun' behind.").

Taken in their totality and accepted as true, the allegations in the proposed amended complaint are sufficient to state a plausible claim for relief under 42 U.S.C. § 1981. *See Andrews v. City of Phila.*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("[A] decision regarding hostile work environment should be made in viewing the totality of the circumstances . . . ."). The Court grants Junkins-Hopkins' motion for leave to amend her complaint with regard to her claim under 42 U.S.C. § 1981 and correspondingly denies JHH's motion to dismiss the same.[5]

Junkins-Hopkins also asserts a breach of contract claim (Count II). JHH moves to dismiss this claim, contending it is barred by Maryland's three-year statute of limitations, as

---

[5] In its motion to dismiss, JHH states in a footnote that Junkins-Hopkins "has also failed to allege that any such comments were made with the requisite severity or pervasiveness to support a hostile work environment claim." (Mem. in Supp. of Mot. to Dismiss at 6.) The Court does not address this argument and considers it waived. *See John Wyeth & Bro. Ltd. v. CIGNA Intern. Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

Junkins-Hopkins did not file her compliant until four years after she resigned. JHH further argues that even if Pennsylvania law applies, Pennsylvania's "borrowing statute" bars the breach of contract claim. In response, Junkins-Hopkins' proposed amended complaint adds allegations that she negotiated and accepted the contract in Pennsylvania, performed some of her duties under the contract in Pennsylvania, and resided in Pennsylvania during her employment with JHH. Junkins-Hopkins presumably seeks to add these allegations in an attempt to get Pennsylvania's four-year limitations period to apply to her breach of contract claim.

Because Junkins-Hopkins brings her breach of contract claim under the Court's supplemental jurisdiction, the Court applies Pennsylvania law to determine whether the claim is barred by the statute of limitations. *See Chandler v. Specialty Tires of Am. (Tenn.), Inc.*, 283 F.3d 818, 823 (6th Cir. 2002) ("A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.") (quotation omitted); *Sköld v. Galderma Labs., L.P.*, No. 14-5280, 2015 WL 1740032, at *5 (E.D. Pa. Apr. 17, 2015) ("Absent a borrowing statute, a federal court exercising supplemental jurisdiction applies the forum state's statute of limitations."). Pennsylvania's "borrowing statute" provides that "[t]he period of limitation applicable to a claim accruing outside this Commonwealth shall be either that provided or prescribed by the law of the place where the claim accrued or by the law of this Commonwealth, whichever first bars the claim." 42 Pa.C.S.A. § 5512(b).

Here, under the facts alleged in the complaint and the proposed amended complaint, Junkins-Hopkins' breach of contract claim accrued in Maryland. All of the defendant institutions are located in Maryland. (Am. Compl. ¶ 3.) Junkins-Hopkins fulfilled the vast majority of her duties under the contract in Maryland. (*See* Am. Compl. ¶ 47.) The conditions of Junkins-

Hopkins employment that she alleges constituted a breach of her employment contract occurred in Maryland. (Am. Compl. ¶¶ 28-43.) Junkins-Hopkins cannot fairly say that her cause of action for breach of contract accrued in Pennsylvania simply because she resided in Pennsylvania during her time with JHH and performed "some" of her duties under the contract from her home in Pennsylvania. (Am. Compl. ¶ 24.)

As a result, under Pennsylvania's "borrowing statute," Maryland's shorter three-year limitations period applies. Md. Code, Cts. & Jud. Proc. § 5-101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."). That limitations period expired in December 2013, one year before Junkins-Hopkins filed this action. JHH's motion to dismiss Junkins-Hopkins' breach of contract claim is therefore granted, and Junkins-Hopkins motion for leave to amend this claim is denied, as amendment would be futile.

/s/ Gerald J. Pappert
GERALD J. PAPPERT, J.